| | |
|---|---|
| **CARMEN CIOTOLA,**<br><br>**PLAINTIFF,**<br>**V.**<br><br>**STAR TRANSPORTATION &**<br>**TRUCKING LLC,**<br>**and**<br><br>**QUARTERBACK**<br>**TRANSPORTATION USA INC.,**<br>**and,**<br><br>**BALL METAL BEVERAGE**<br>**CONTAINER CORP.**<br><br><br>**DEFENDANTS.** | **UNITED DISTRICT COURT**<br>**FOR THE MIDDLE DISTRICT**<br>**OF PENNSYLVANIA**<br><br>**CIVIL ACTION – LAW**<br><br>**JURY TRIAL DEMANDED**<br><br>**NO.:** |

## COMPLAINT

AND NOW COMES Plaintiff, Carmen Ciotola, by and through his legal counsel, Fellerman & Ciarimboli Law, P.C., to hereby complain against Defendants Star Transportation & Trucking LLC, Quarterback Transportation USA Inc., and Ball Metal Beverage Container Corp., and in support thereof avers follows:

## OVERVIEW

Ball Metal Beverage Container Corp. arranged for the transportation of a truck load of freight from Middletown, NY to Farmington, Missouri.  To transport

the freight, Ball Metal Beverage Container Corp. negligently brokered or sub-contracted the transportation of the freight to Star Transportation & Trucking LLC and/or Quarterback Transportation USA Inc.  On November 12, 2018, in the course of transporting the freight for Star Transportation & Trucking LLC and/or Quarterback Transportation, driver Ronald Hataway recklessly crashed the tractor-trailer at a high rate of speed into the rear of Plaintiff Carmen Ciotola, who at the time was safely operating his Ford Ranger pickup truck.  As a result, Plaintiff sustained severe and permanent injuries, as set forth in greater detail below.

## **PARTIES**

1.     Plaintiff Carmen Ciotola ("Plaintiff" or "Mr. Ciotola"), is competent adult individual who is domiciled at 2 Honey Hole Road, Drums, Pennsylvania 18222 and is a citizen of the Commonwealth of Pennsylvania.

2.     Defendant, Star Transportation & Trucking LLC (hereinafter "Star Transportation") is a limited liability company organized and existing under the laws of the State of Missouri with a principal place of business of 842 Dumont Plaza, St. Louis, Missouri 63125, and is a citizen of the state of Missouri.

3.     Star Transportation's U.S. D.O.T. number is listed as 2499630.

4.     Star Transportation's MC Number is listed as MC-866256.

5.     Defendant Quarterback Transportation USA Inc. (hereinafter "Quarterback Transportation") is a Delaware corporation with a principal place of

business located 588 Central Parke Boulevard, Suite 219, Mason, Ohio 45040, and is a citizen of the state of Ohio.

6.      Quarterback Transportation's U.S. D.O.T. number is listed as 2243878.

7.      Quarterback Transportation's MC Number is listed as MC-670367.

8.      Defendant Ball Metal Beverage Container Corp. ("Ball Metal") is a Colorado corporation with a principal place of business of 9300 West 108th Circle, Westminster, CO 80021, and is a citizen of the state of Colorado.

9.      Ball Metal's U.S. D.O.T. number is listed as 416188.

10.     Ball Metal, Star Transportation, and Quarterback Transportation will be referred to as "Defendants" when referenced collectively in the Complaint.

11.     Ronald Hataway ("Mr. Hataway") is a competent adult individual who resides at 2121 Handley Drive, Apartment 81, Fort Worth, Texas 76112.

12.     At all times relevant hereto, Defendants were or should have been authorized interstate motor carriers authorized to transport goods in interstate commerce and in the Commonwealth of Pennsylvania pursuant to one or more permits issued by the Interstate Commerce Commission and/or by the United States Department of Transportation ("USDOT").

13.     Accordingly, Defendants were subject to all state and federal laws, statutes regulations, and industry standards governing the hiring of safe and

qualified commercial drivers, the safe maintenance and operation of commercial motor vehicles, and the safe brokering of goods in interstate commerce, including without limitation, Pennsylvania Statutes governing motor vehicles and the Federal Motor Carrier Safety Regulations ("FMCSR") set forth in subchapters A and B of Chapter III of the Code of Federal Regulations, Title 49 – Transportation.

14.    At all times relevant hereto, Mr. Hataway was a class A licensed motor vehicle operator driving a 2009 Volvo VNL with VIN number 4V4NC9KJ19N491951 (hereinafter "Tractor Trailer") owned, leased, assigned, and/or operated by Star Transportation and/or Quarterback Transportation. Accordingly, Mr. Hataway was subject to all state and federal laws, statutes, regulations and industry standards governing the safe maintenance and operation of commercial motor vehicles and tandem trailers including, without limitation, Pennsylvania Statutes governing motor vehicles and the Federal Motor Carrier Safety Regulations set forth subchapters A and B of Chapter III of the Code of Federal Regulations, Title 49 – Transportation.

15.    At all times relevant hereto, the Tractor Trailer was owned, leased, assigned, and/or operated by Star Transportation & Trucking LLC, and/or Quarterback Transportation USA Inc. and was being operated and/or controlled by Mr. Hataway with the consent of Defendants for the financial benefit of Defendants.

16.    At all times relevant hereto, Mr. Hataway was employed and/or contracted to perform services for and was operating the Tractor Trailer for Defendants, under Defendants' USDOT operating authority, and was subject to their supervision, control or right to control, such that Defendants should be considered his actual and statutory employer and therefore vicariously liable for Mr. Hataway's negligence and recklessness.

17.    At all relevant times hereto, Mr. Hataway was the agent, servant, workman, and/or employee of Defendants and was acting in the course and scope of his employment, under the direction, control, and authority these Defendants.

18.    At all relevant times hereto, Mr. Hataway was driving a Tractor Trailer owned, leased, assigned, and/or operated by Defendants.

19.    At all relevant times hereto, Defendants acted as a single entity and operated and conducted business as a single entity for transporting goods in interstate commerce.

20.    At all relevant times, Defendants were engaged in the joint undertaking of a particular transaction for mutual profit, mutual control, mutual contribution and this joint undertaking was memorialized in contract.

21.    At all relevant times hereto, Defendants acted as a joint venture for transporting goods in interstate commerce.

22.     At all relevant times, Ball Metal contracted with Defendants Star Transportation and/or Quarterback Transportation to move the load being transported by Hataway.

23.     At all relevant times hereto, Ball Metal acted as a motor carrier as well as the broker of the load being transported at the time of the crash, despite having no operating authority to do so.

24.     Accordingly, Defendants are personally liable, jointly and severally, in partnership, joint venture, or sole proprietorship for the tractor-trailer crash that caused Plaintiff to suffer permanent catastrophic injuries.

25.     Defendants acted in a manner that either alone, combined, and/or occurring with the actions of other Defendants, directly and proximately caused the crash and the resulting injuries suffered to the Plaintiff.

26.     At all relevant times, the Federal Motor Carrier Safety Regulations apply hereto, pursuant to 67 Pa. Code §231, *et seq.*

27.     At all relevant times, Plaintiff acted with due care and in no way caused or contributed to the crash that forms the basis of the lawsuit.

28.     Plaintiff seeks damages for all harms and losses permissible under Pennsylvania law, including, but not limited to, the conscious pain and suffering, disfigurement, mental anguish, and loss of past future earnings caused by the negligence and recklessness of Defendants.

## JURISDICTION AND VENUE

29.     This Honorable Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 because (a) there is complete diversity of citizenship between Plaintiff and Defendants; and (b) the matter in controversy exceeds the jurisdictional limit.

30.     Venue is appropriate under 28 U.S.C. §1391(b)(2).

## OPERATIVE FACTS COMMON TO ALL COUNTS

31.     The preceding paragraphs are incorporated herein by reference as though fully set forth.

32.     On November 12, 2018, at or about 3:52 p.m., Mr. Hataway was operating a Tractor Trailer owned, leased, assigned, and/or operated by Star Transportation and/or Quarterback Transportation.

33.     On November 12, 2018, at approximately 3:52 p.m., Plaintiff was operating a 2004 Ford Ranger bearing the license plate No. ZBK4347 ("Ford") traveling on Interstate 81 South in Luzerne County, Pennsylvania.

34.     At this date and time, Mr. Hataway was operating the Tractor Trailer on the same stretch of Interstate 81 South in Luzerne County, Pennsylvania.

35.     At or around the aforementioned time and date, Plaintiff was safely traveling in the right lane of 81 South, with yellow lights flashing on top of his

Ford due to that fact that he was acting as an escort for a truck designated as an oversized load.

36.     As Plaintiff was safely driving down 81 South, he was abruptly and without warning rear-ended by the Tractor Trailer driven by Mr. Hataway.

37.     According to the police report, attached hereto as Exhibit "A," Mr. Hataway recklessly took his eyes of the road while "reaching for his chili," and neglected to notice he was quickly approaching the Ford in front of him.

38.     The reckless nature of Mr. Hataway's driving was further detailed by eye witness Thomas Dargis, who described the accident as follows in a Facebook posting made shortly after observing the crash:

> "Seen this right after it happened a guy in volvo was drivin like a a--hole all the way thru 55 zone in Scranton.  Strip the f--kers cdl."

39.     At all relevant times hereto, Defendant Hataway exhibited a conscious disregard for the health and safety of the motoring public by taking his eyes completely off the road in order to eat chili while operating the Tractor Trailer at dangerously high speeds.

40.     At all times relevant hereto, Mr. Hataway operated the aforesaid Tractor Trailer in such a reckless, carless, and negligent manner, that he did not notice he was rapidly approaching Plaintiff's vehicle in the moments leading up to the crash.

41.    As a result of the crash Plaintiff suffered catastrophic, permanent injuries as set forth in more detail below.

42.    The injuries Mr. Ciotola suffered as a result of the crash are as follows:

     i.  multiple vertebral fractures requiring surgical fusion and placement of hardware;

     ii. permanent bowel injury requiring surgical intervention and ongoing incontinence;

     iii. traumatic brain injury;

     iv. large head laceration with permanent scar over 6 inches long;

     v.  fractured scapula;

     vi. torn rotator cuff and bicep requiring surgical repair;

     vii. traumatic abdominal compartment syndrome;

     viii. traumatic hemothorax

     ix. acute renal failure;

     x.  fluid filled abdominal cavity;

     xi. Hypoalbuminemia;

     xii. Any and all other injuries set forth in his medical records.

43.    At all relevant times hereto, Mr. Ciotola acted in a safe, prudent, and reasonable manner and in no way contributed to his injuries or damages.

44.    On the aforementioned date, place, and time, Hataway operated the aforesaid Tractor Trailer in such a reckless, careless, and negligent manner so as to drive off of the roadway causing this Crash and the fire resulting therefrom.

45.    The following is a photo of Mr. Ciotola's vehicle from following the crash:



46.     At all times relevant, upon information and belief, Hataway was under the influence of several medications and/or illegal drugs that when combined have the known side effect of causing drowsiness and/or other side effects that should prevent and disqualify a professional truck driver from operating any commercial motor vehicle, including the Tractor Trailer.

47.     Upon information of belief, at the time of the Crash, Hataway was in violation of the FMCSR hours of service limits and consciously chose to operate the Tractor Trailer in a fatigued condition.

48.     Moreover, Star Transportation, Quarterback Transportation, and/or Ball Metal, participated in, knew, or should have known that Hataway was operating over hours, driving while fatigued and otherwise operating the Tractor Trailer in an unsafe, dangerous and reckless condition in violation of the FMCSR's and Pennsylvania law.

49.     At all relevant times, upon information and belief, Hataway's fatigued and medicated condition impaired his judgment, perception and reaction to such an extent that he inexplicably drove the Tractor Trailer into Plaintiff without braking.

50.     At all relevant times, Hataway had an unsafe history of motor vehicle violations / and criminal violations including, but not limited to:

    a.  Driving a CMV in Possession of Drugs in June 2018

    b.  Failure to obey highway sign in March 2017;

    c.  Speeding violation in July 2018;

    d.  Speeding in September 2004;

    e.  DUI – Highest Rate of Alcohol - January 2014;

    f.  Possession of Marijuana - January 2014;

    g.  Use/Possession of Drug Paraphernalia – January 2014;

    h.  DUI in Texas in April 1991;

    i.  Unlawful possession of a fire arm in 2006;

    j.  Assault causing bodily injury to a family member in 2006;

    k.  Possession of marijuana in May 2006.

51.  At all relevant times, Star Transportation, Quarterback Transportation, and/or Ball Metal, knew or should have known that Hataway failed and/or refused to list the above motor vehicle violations on his employment application.

52.  In the alternative, Star Transportation, Quarterback Transportation, and/or Ball Metal, knew of Hataway's reckless and dangerous driving record and chose to hire him anyway.

53.  At all relevant times, Star Transportation, Quarterback Transportation, and/or Ball Metal permitted Hataway to operate the Tractor Trailer even though those Defendants knew or should have known that Hataway tested positive, or refused to test, on a pre-employment drug or alcohol test.

54.   At all relevant times, Star Transportation, Quarterback Transportation, and/or Ball Metal permitted Hataway to operate the Tractor Trailer even though those Defendants knew or should have known that Hataway did not provide proof that he successfully completed the DOT return-to-duty requirements, specific to alcohol and drug use when a driver tests positive and/or refuses a drug or alcohol test.

55.   At all relevant times, Star Transportation, Quarterback Transportation, and/or Ball Metal knew or should have known that Hataway had a history of being deemed medically disqualified from operating a commercial motor vehicle yet permitted Hataway to operate the Tractor Trailer under their control while Hataway's ability and alertness were so impaired, through fatigue, illness or otherwise, that he was unsafe to operate the Tractor Trailer.

56.   In fact, Hataway had criminal hearing for drug possession charges scheduled for the week following the crash.

57.   At all relevant times, Star Transportation, Quarterback Transportation, and/or Ball Metal continued to allow Hataway to operate the Tractor Trailer when they knew or should have known that Hataway' medical history made him a danger to the driving public.

58.   At all relevant times, upon information and belief, Star Transportation, Quarterback Transportation, and/or Ball Metal had a propensity

for drug and alcohol violations, including no fewer than 6 arrests for DUI and/or drug possession.

59.    That information was known and/or readily available to Star Transportation,  Quarterback Transportation, and/or Ball Metal, all before this Crash that catastrophically injured Plaintiff.

60.    At all relevant times, upon information and belief, Star Transportation,  Quarterback Transportation, and/or Ball Metal knew or should have had a propensity for violations, including, but not limited to, at least 11 violations for unsafe driving, speeding, DUI, and/or drug possession charges.

61.    At all relevant times, the FMCSA as part of its Safety Management System maintained a user-friendly website that was available to the public that tracks the registration, safety and compliance of all motor carriers that have a USDOT number, like Star Transportation and Quarterback Transportation.  The online FMCSA information also provided historical information and easy to understand explanations of how to use the site and what each category of information and score means.  The FMCSA's online public information also listed the crashes and safety violations for the last 24 months.

62.    Defendants were aware of the FMCSA website.

63.    At all relevant times, the FMCSA website contained information that should have alerted Ball Metal that Star Transportation and Quarterback

Transportation were unsafe motor carrier that utilized unsafe drivers and dangerous equipment.

64.     Moreover, despite Hataway's deplorable safety record, incompetence, and dangerous behavior, Star Transportation, Quarterback Transportation, and/or Ball Metal negligently, recklessly and with conscious disregard for the safety of the driving public operated, hired, retained, and/or assigned him to deliver goods to its customers using tractors and trailers.

65.     At all relevant times, Star Transportation and Quarterback Transportation exercised complete control over the dispatching of the tractor-trailer driven by Hataway at the time of the crash.

66.     At all relevant times, Star Transportation and Quarterback Transportation exercised complete control over the routing of the tractor-trailer driven by Hataway at the time of the crash.

67.     At all

68.     At all relevant times, Ball Metal had the contractual right to and/or exercised control over the transportation of the load in question to such a degree that Hataway, Star Transportation, and Quarterback Transportation should all be considered agents of Ball Metal.

**COUNT 1**
**VICARIOUS LIABLITY**

## <u>CARMEN CIOTOLA v.  STAR TRANSPORATION & TRUCKING LLC,  AND QUARTERBACK TRANSPORTATION USA INC. AS BEING VICARIOUSLY LIABLE FOR RONALD HATAWAY</u>

69.     The preceding paragraphs are incorporated by reference as though fully set forth herein.

70.     The negligence, carelessness, and/or recklessness of Defendants Star Transportation and Quarterback Transportation, as being vicariously liable for the actions of Mr. Hataway consisted of, but are not limited to the following:

a.      Failing to maintain proper and adequate control of his Tractor Trailer;

b.      Failing to keep his eyes on the road at all times;

c.      Driving carelessly in violation of 75 Pa. C.S.A. §3714;

d.      Failing to pay proper attention while operating his Tractor Trailer on Instate 81 South;

e.      Failing to take proper precautions in the operation of his Tractor Trailer so as to avoid the collisions that occurred;

f.      Operating his Tractor Trailer in a negligent, careless and reckless manner without due regard for the rights and safety of Mr. Ciotola;

g.      Failing to exercise due care and caution under all of the existing circumstances;

h.      Failing to have his Tractor Trailer under such control that it could be readily stopped, turned aside or the speed thereof slackened upon the appearance of danger;

i.      Failing to remain alert;

j.    Traveling at an excessive rate of speed under the circumstances;

k.    Violating the applicable rules, regulations and laws pertaining to the safe and proper operation of motor vehicles and/or tractor trailers;

l.    Failing to operate his Tractor Trailer in accordance with the Federal Motor Carrier Safety Regulations;

m.    Failing to properly control his Tractor Trailer in light of the circumstances then and there existing, including traffic patterns existing on the roadway;

n.    Failing to make necessary and reasonable observations while operating his Tractor Trailer;

o.    Failing to timely and properly apply his brakes;

p.    Violating FMCSA Regulation 383 dealing with required knowledge and skills;

q.    Consciously choosing to drive at an unsafe speed given the circumstances;

r.    Consciously refusing to reduce speed in response to traffic patterns then and there existing on the roadway;

s.    Consciously choosing to disregard traffic patterns then and there existing on the roadway;

t.    Failing to perform proper pre-trip inspection;

u.    Violating both the written and unwritten policies, rules, guidelines and regulations of the Star;

v.    Failing to apprise himself of and/or abide by the Federal Motor Carrier Safety Regulations;

w.    Failing to apprise himself of and/or abide by the regulations and laws pertaining to the operation of commercial vehicles;

x.    Failing to ensure the parts and accessories of the Tractor Trailer were in good working order in violation of Section 392.7;

y.    Failing to adhere to the requirements with respect to lamps and reflectors and/or conspicuity requirements in violation of Section 393.9; 393.13; 393.19; and 393.95;

z.    Failing to properly control her Tractor Trailer unit in light of the circumstances then and there existing on the roadway;

aa.    Failing to make necessary and reasonable observations while operating the Tractor Trailer;

bb.    Failing to take evasive action and/or failing to take appropriate and timely evasive action to avoid the crash with the Plaintiffs;

cc.    Violating Sections 383.110; 383.111; and 383.113 dealing with required knowledge and skill;

dd.    Violating Section 395.1 with respect to hours of service of drivers;

ee.    Making a conscious choice to drive in a fatigued condition knowing that driving in a fatigued condition impairs perception and judgment;

ff.    Failing to adhere to the amount of driving hours limit;

gg.   Causing the Crash due to being on the road more than the regulated amount of hours;

hh.   Operating the Tractor Trailer in an unsafe condition in violation of Section 396.7;

ii.   Failing to inspect the Tractor Trailer before and during its operation in violation of Section 396.9; 396.11; 396.13; and 396.17;

jj.   Failing to apprise herself of and/or abide by the Federal Motor Carrier Safety Regulations;

kk.   Failing to apprise herself of and/or abide by the regulations and laws pertaining to the operation of commercial motor vehicles;

ll.   Violating both the written and unwritten policies, rules, guidelines and regulations of Drayage, Evans, and/or Direct ChassisLink;

mm.   Consciously choosing to drive over the regulated amount of hours;

nn.   Acting with a conscious disregard for the rights and safety of Mr. Ciotola; and

oo.   Failing to conduct post-crash drug and alcohol testing of Mr. Hataway;

pp.   Failing to suspend, discipline, or provide remedial training to Mr. Hataway prior to the Crash despite his history of unsafe and reckless driving;

qq.   Allowing Hataway to destroy his cell phone following the crash, despite being on notice of the legal requirement to preserve the phone by virtue of spoliation letters received immediately following the crash.

71.   As a result of the above-stated acts and omissions, Mr. Ciotola has suffered such harm as has been previously stated herein.

**WHEREFORE**, Plaintiff, Carmen Ciotola, seeks all damages allowed under the laws of the Commonwealth of Pennsylvania, including punitive damages, in an amount in excess of $75,000.

## COUNT 2
### NEGLIGENT and/or RECKLESS HIRING / SUPERVISION / RETENTION CARMEN CIOTOLA V. STAR TRANSPORTATION AND TRUCKING, LLC AND QUARTERBACK TRANSPORTATION USA INC. AND BALL METAL BEVERAGE CONTAINER CORP.

72.   The preceding paragraphs are incorporated herein by reference as though fully set forth.

73.   Defendants Star Transportation and Quarterback Transportation had an obligation and duty to hire, retain and supervise drivers who operate its vehicles in a safe manner.

74.   Mr. Ciotola was injured as a result of an incident related to Mr. Hataway's unsafe driving.

75.   All relevant times, Star Transportation and Quarterback Transportation knew or should have known that Hataway had an unsafe history of motor vehicle violations / and criminal violations including, but not limited to:

    a.  Driving a CMV in Possession of Drugs in June 2018

    b.  Failure to obey highway sign in March 2017;

    c.  Speeding violation in July 2018;

    d.  Speeding in September 2004;

    e.  DUI – Highest Rate of Alcohol - January 2014;

    f.  Possession of Marijuana - January 2014;

    g.  Use/Possession of Drug Paraphernalia – January 2014;

    h.  DUI in Texas in April 1991;

    i.  Unlawful possession of a fire arm in 2006;

    j.  Assault causing bodily injury to a family member in 2006;

    k.  Possession of marijuana in May 2006.

76.   In addition, the negligence, carelessness, and/or recklessness of Defendants Star Transportation and Quarterback Transportation, in the hiring, supervision and retention of Mr. Hataway, consisted of the following:

    a.   Failing to properly train, monitor and/or supervise its employees, drivers and/or agents including Mr. Hataway;

b.    Failing to train and/or properly train Mr. Hataway prior to allowing him to operate its Tractor Trailer;

c.    Hiring and/or continuing to employ Mr. Hataway despite the fact that it knew or should have known that his violation of the FMCSA hours of service made him unfit to safely operate a commercial vehicle;

d.    Hiring and/or continuing to employ Mr. Hataway despite the fact that he had a propensity for driving violations;

e.    Hiring and/or continuing to employ Mr. Hataway despite the fact that he had a propensity for violating "Rules of the Road" and FMCSR;

f.    Failing to perform alcohol and/or drug tests after the crash;

g.    Failing to do preventable analysis as recommended by the FMCSR;

h.    Failing to have an appropriate disciplinary policy within the company;

i.    Hiring and/or continuing to employ Mr. Hataway despite the fact that it knew or should have known that his propensity to break the vehicular rules could and/or would put the driving public at risk;

j.    Permitting Mr. Hataway to operate its Tractor Trailer when it knew or should have known that he was not properly qualified and/or trained;

k.    Failing to train and/or properly train Mr. Hataway prior to allowing him to operate its Tractor Trailer;

l.    Allowing Mr. Hataway to operate Tractor Trailers in its possession when it knew or should have known that such operation posed a risk of danger to others lawfully on the roadway;

m.   Failing to adopt appropriate employee manuals and/or training procedures;

n.   Failing to enforce both written and unwritten policies of Star;

o.   Failing to ensure that its employees, drivers, and/or agents were aware of and complied with the written and unwritten policies of Star;

p.   Failing to implement and/or enforce an effective safety system;

q.   Failing to ensure that its management personnel and drivers were aware of the requirements and dictates of the FMCSA regulations;

r.   Failing to ensure that is employees, drivers, and/or agents complied with the provisions of the FMCSA regulations;

s.   Failing to ensure that its employees, drivers, and/or agents were aware of and complied with rules, laws and regulations pertaining to and governing the operation of commercial vehicles;

t.   Violating the applicable rules, laws, and regulations pertaining to and governing the operation of commercial vehicles;

u.   Failing to monitor and/or regulate its drivers' actions;

v.   Failing to monitor and/or regulate its drivers' hours;

w.   Failing to have an auditing system in place to audit its drivers' logs, or if a system is in place, failing to use it appropriately;

x.   Failing to use a 3rd party vendor to audit their drivers' logs, or if they did use a 3rd party vendor, failing to use it appropriately;

y.   Failing to have policy or mechanism in place to address cumulative fatigue in its drivers;

z.   Placing more emphasis on profits than on safety of its drivers and the motor public;

aa.   Knowingly violating federal and state law regarding the responsibilities of motor carries and the operation of commercial vehicles;

bb.   Failing to act upon and remedy violations of FMCSA regulation 395;

cc.   Failing to act upon and remedy violations of FMCSA regulation 383;

dd.   Failing to act upon and remedy known violations of industry standards;

ee.   Acting in conscious disregard for the rights and safety of Mr. Ciotola;

ff.   Failing to have appropriate policies and procedures with regard to the hiring of drivers;

gg.   Failing to follow the written and/or unwritten policies and procedures with regard to the hiring of its drivers;

hh.   Failing to have appropriate policies and procedures with regard to the monitoring of its drivers;

ii.   Failing to follow the written and/or unwritten policies and procedures with regard to the monitoring of its drivers;

jj.   Consciously disregarding federal and state law regarding the responsibilities of motor carries and the operation of commercial vehicles; and

kk.   Violating all applicable provisions of the FMCSA;

ll.   Habitually and recklessly disregarding state and federal laws and regulations and industry standards governing the safe hiring, training and retention of tractor trailer drivers, the safe

operation of a motor carrier transporting goods in interstate commerce, and the safe operation of commercial motor vehicles that created a zone and culture of danger that constituted a dangerous mode of operation, which was reasonably anticipated to cause injury and death to the motoring public and created a danger to all motorists exposed to its unsafe commercial motor vehicle drivers like Mr. Hataway.

mm.   Aiding and abetting Hataway's violations under 390.13 due to their actual and constructive notice of Hataway's habitual unsafe driving practices;

nn.   Failing to suspend, discipline, or provide remedial training to Mr. Hataway prior to the Crash despite his history of unsafe and reckless driving.

77.   Ball Metal was likewise negligent for hiring Star Transportation and/or Quarterback Transportation to ship its freight when it knew or should have known that Star Transportation and Quarterback Transportation have a propensity for engaging in unsafe and dangerous shipment practices and hiring dangerous and poorly trained drivers such as Mr. Hataway.

78.   As a result of the above-stated acts and omissions, Mr. Ciotola has suffered such harm as has been previously stated herein.

**WHEREFORE**, Plaintiff, Carmen Ciotola, seeks all damages allowed under the laws of the Commonwealth of Pennsylvania, including punitive damages, in an amount in excess of $75,000.

## COUNT 3
## NEGLIGENT ENTRUSTMENT

## **CARMEN CIOTOLA V. STAR TRANSPORTATION AND TRUCKING, LLC, QUARTERBACK TRANSPORTATION USA INC. AND BALL METAL BEVERAGE CONTAINER CORP.**

79.    The preceding paragraphs are incorporated herein by reference as though fully set forth.

80.    Defendants Star Transportation, Quarterback Transportation, and Ball Metal had a duty to use due care in choosing a careful and competent driver.

81.    Defendants Star Transportation, Quarterback Transportation, and Ball Metal entrusted the Tractor Trailer to Mr. Hataway despite the fact that Mr. Hataway failed to possess the knowledge, skill, experience, available equipment and personal characteristics to operate a Tractor Trailer.

82.    Defendants Star Transportation, Quarterback Transportation, and Ball Metal knew or should have known that Mr. Hataway failed to possess the knowledge, skill, experience, available equipment and personal characteristics to transport freight and/or goods without creating an unreasonable risk to operate a Tractor Trailer without creating an unreasonable risk of injury to others.

83.    Because Defendants Star Transportation, Quarterback Transportation, and Ball Metal entrusted the Tractor Trailer to an incompetent driver, Star is liable for any negligent and/or reckless conduct of Mr. Hataway.

84.    Defendants Star Transportation, Quarterback Transportation, and Ball Metal was negligent entrusting the Tractor Trailer to Mr. Hataway, when it knew

or should have known with the exercise of reasonable due care that Mr. Hataway lacked the necessary skill, judgment, and/or prudence with which to operate the vehicle.

85.     Defendants Star Transportation, Quarterback Transportation, and Ball Metal was negligent and/or reckless in entrusting the Tractor Trailer to Mr. Hataway, when it knew or should have known with the exercise of reasonable care that Mr. Hataway had a propensity to cause motor vehicle collisions.

86.     Specifically, Star Transportation, Quarterback Transportation, and Ball Metal knew or should have known that at all relevant times, Hataway had an unsafe history of motor vehicle violations / and criminal violations including, but not limited to:

    a.   Driving a CMV in Possession of Drugs in June 2018

    b.   Failure to obey highway sign in March 2017;

    c.   Speeding violation in July 2018;

    d.   Speeding in September 2004;

    e.   DUI – Highest Rate of Alcohol - January 2014;

    f.   Possession of Marijuana - January 2014;

    g.   Use/Possession of Drug Paraphernalia – January 2014;

    h.   DUI in Texas in April 1991;

    i.   Unlawful possession of a fire arm in 2006;

j.   Assault causing bodily injury to a family member in 2006;

k.   Possession of marijuana in May 2006.

87.   Defendants Star Transportation, Quarterback Transportation, and Ball Metal was negligent in entrusting the Tractor Trailer to Mr. Hataway, when it knew or should have known with the exercise of reasonable care that Mr. Hataway had a propensity to violate the motor vehicle code.

88.   Ball Metal was likewise negligent for entrusting Star Transportation and/or Quarterback Transportation to ship its freight when it knew or should have known that Star Transportation and Quarterback Transportation have a propensity for engaging in unsafe practices and hiring dangerous and poorly trained drivers such as Mr. Hataway.

89.   Ball Metal knew or should have known in the past 24 months, Star Transportation and its drivers had an unsafe driving record that included:

a.   5 lane restriction violations;

b.   3 speeding violations in excess of 6-10 MPH over the speed limit;

c.   2 speeding violations in excess of 11-14 MPH over the speed limit;

d.   1 speeding violation in excess of 15 MPH over the speed limit;

e.   2 violations for failure to obey traffic control devices;

f.   1 violation for failing to wear a seatbelt while operating a CMV;

g.   1 violation for improper lane change

90.    At all relevant times, Defendants Star Transportation, Quarterback Transportation, and Ball Metal had a duty to ensure that it had appropriate hiring practices that put competent drivers behind the wheel.

91.    At all relevant times, Defendants Star Transportation, Quarterback Transportation, and Ball Metal had a duty to ensure that it had appropriate policies in place to ensure that its drivers did not violate FMCSA regulations.

92.    Defendants Star Transportation, Quarterback Transportation, and Ball Metal knew or in the exercise of reasonable care should have known that entrusting the Tractor Trailer to Mr. Hataway would likely cause harm to the motoring public such as the harm that was caused on November 12, 2018 to Mr. Ciotola.

93.    Defendants Star Transportation, Quarterback Transportation, and Ball Metal had a duty to entrust the Tractor Trailer to an attentive and skilled driver.

94.    Defendants Star Transportation, Quarterback Transportation, and Ball Metal failed to ensure that it hired and retained attentive skilled drivers.

95.    Defendants Star Transportation, Quarterback Transportation, and Ball Metal had an obligation / duty to entrust the Tractor Trailer to drivers who operate their vehicles in a safe manner.

96.    Mr. Ciotola was injured as a result of the Defendants' unsafe driving.

97.     By entrusting the Tractor Trailer to Mr. Hataway, Defendants Star Transportation, Quarterback Transportation, and Ball Metal acted in conscious disregard to the rights and safety of Mr. Ciotola.

98.     As a result of the above-stated acts and omissions, Mr. Ciotola has suffered such harm as has been previously stated herein.

**WHEREFORE**, Plaintiff, Carmen Ciotola, seeks all damages allowed under the laws of the Commonwealth of Pennsylvania, including punitive damages, in an amount in excess of $75,000.

<u>**COUNT 4**</u>
<u>**JOINT VENTURE**</u>
<u>**PLAINTIFF CARMEN CIOTOLA VS. STAR TRANSPORTATION AND TRUCKING, LLC, QUARTERBACK TRANSPORTATION USA INC. AND BALL METAL BEVERAGE CONTAINER CORP.**</u>

99.     The preceding paragraphs are incorporated herein by reference as though fully set forth.

100.    On the above referenced, date, place, and time, all Defendants were engaged in a joint venture to haul goods for profit.

101.    Specifically, at all times material hereto, Defendants entered into a continuing business transaction in which they consolidated all entities and entered into one single entity operating as a joint venture providing full service freight transportation, freight storage, and freight logistics brokering, operating and utilizing a fleet of semi-trucks, trailers, warehouses, and facilities.  The Defendants

combined their resources, officers, personnel and/or efforts and agreed to undertake a common interest in the delivery of services in the commercial trucking industry providing freight transportation of goods and broker logistics in interstate commerce. Star Transportation, Quarterback Transportation, and Ball Metal shared in all profits that were generated.

102.   Accordingly Star Transportation, Quarterback Transportation, and/or Ball Metal are personally liable, jointly and severally, in partnership, joint venture or sole proprietorship for the Crash and resulting permanent injuries and damages suffered by Plaintiff.

103.   At all relevant times hereto, Ball Metal contracted with Quarterback Transportation and/or Star Transportation to move the load being transported by Hataway.

104.   At all relevant times hereto, Ball Metal acted as a motor carrier as well as the broker of the load being transported at the time of the Crash, despite having no operating authority to do so.

105.   Each Defendant acted in a manner that either alone or combined and occurring with the actions of other Defendants' acts of negligence, directly and proximately caused the crash and the resulting injuries suffered to the Plaintiff.

106.   Upon information and belief, Mr. Hataway was paid by all Defendants for this transportation, including allowances for fuel costs, tolls, meals, and other expenses.

107.   Upon information and belief, all Defendants are in contact through numerous means of communication, including, but not limited to, email, faxes, telephone, and mobile application to track status of shipment from origin to delivery.

108.   As a result of this transportation, all Defendants earned, or intended to earn, a profit.

109.   On the above referenced, date, place, and time, all Defendants controlled the Tractor Trailer through its duly authorized agent, servant, and/or employee, Mr. Hataway.

110.   On the above referenced, date, place, and time, Mr. Hataway was performing a service for the benefit of all Defendants namely the transportation of goods and material for profit.

111.   Defendants were aware Mr. Hataway was transporting the goods and materials.

112.   Defendants had the right to control Mr. Hataway in performing this service.

113.   Defendants exercised this control over Mr. Hataway in the manner described herein in the preceding sections of this Complaint.

114.   Defendants held out Mr. Hataway as an agent, servant, and/or employee, such that a reasonable person would conclude that Mr. Hataway was an agent, servant, and/or employee of Defendants and it is vicariously liable for the acts and/or omissions of Mr. Hataway.

115.   As a direct and proximate cause of the above stated acts and omissions, Plaintiff suffered the serious, severe, and permanent injuries stated herein.

**WHEREFORE**, Plaintiff, Carmen Ciotola, seeks all damages allowed under the laws of the Commonwealth of Pennsylvania, including punitive damages, in an amount in excess of $75,000.

Respectfully submitted,

FELLERMAN & CIARIMBOLI LAW, P.C.

By:_____

Edward J. Ciarimboli, Esq.
Harry P. McGrath, Jr., Esq.
183 Market Street, Suite 200
Kingston, PA  18704
570-714-4878
*Attorneys for Plaintiff Carmen Ciotola*