# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CARMEN CIOTOLA,<br>                    Plaintiff<br><br>v.<br><br>STAR TRANSPORTATION &<br>TRUCKING LLC, and<br><br>QUARTERBACK<br>TRANSPORTATION, INC., and<br><br>BALL METAL BEVERAGE<br>CONTAINER CORP.,<br>                    Defendants | CIVIL ACTION – LAW<br><br>No. 2:19-CV-00753 |

## ANSWER OF DEFENDANT BALL METAL BEVARAGE CONTAINER CORP. TO PLAINTIFF'S AMENDED COMPLAINT, WITH AFFIRMATIVE DEFENSES AND CROSSCLAIMS

AND NOW COMES defendant, Ball Metal Beverage Container Corp. ("Ball Metal"), by its undersigned legal counsel, to answer the complaint against it, raise affirmative defenses, and to cross-claim against defendants Star Transportation & Trucking LLC and Quarterback Transportation Inc. (Quarterback Transportation"). In support whereof, Ball Metal avers follows:

<u>OVERVIEW</u>

Ball Metal denies Plaintiff's Overview as stated.

Denied that Ball Metal "arranged for the transportation" of the freight. On the contrary, Ball Metal used the services of Quarterback Transportation to

arrange for the transportation of freight from Middletown, NY to Farmington, Mo. Quarterback Transportation would have contracted with a motor carrier such as Star Transportation to carry the freight. After reasonable investigation, Ball Metal is without sufficient knowledge or information to form a belief as to the truth of the remainder of plaintiff's "Overview," which is therefore deemed denied.

<u>PARTIES</u>

1.     Admitted on information and belief.

2.     Admitted.

3.     Admitted.

4.     Admitted.

5.     Admitted.

6.     Admitted.

7.     Admitted.

8.     Admitted.

9.     Admitted.

10.     Admitted.

11.     After reasonable investigation, Ball Metal is without sufficient knowledge or information to form a belief as to the truth of par. 11 of the Complaint, and therefore the allegations in par. 11 are deemed denied.

4833-3847-3373

12. To the extent that par. 12 consists of conclusions of law, it is denied as to Ball Metal. To the extent that the allegations of par. 12 are directed to Star Transportation and Quarterback Transportation, no response is required from Ball Metal. Denied that Ball Metal either was, or should have been, authorized to transport goods in interstate commerce.

13. To the extent that par. 13 consists of conclusions of law, it is denied as to Ball Metal. To the extent that the allegations of par. 13 are directed to Star Transportation and Quarterback Transportation, no response is required from Ball Metal. Denied that Ball Metal was an authorized motor carrier or transportation broker subject to the laws and regulations governing motor carriers and transportation brokers described in par. 13.

14. To the extent that par. 14 consists of a conclusion or conclusions of law, it is denied as to Ball Metal. After reasonable investigation, Ball Metal is without sufficient knowledge or information to form a belief as to the truth of the facts alleged in par. 14 of the Complaint, and therefore they are deemed denied.

15. To the extent par. 15 consists of conclusions of law, it is denied as to Ball Metal. To the extent that the allegations of par. 15 are directed to Star Transportation and Quarterback Transportation, no response is required from Ball Metal. Denied that Mr. Hataway operated and/or controlled the Tractor Trailer for the financial benefit of Ball Metal or with its consent. Denied that

Mr. Hataway operated and/or controlled the Tractor Trailer for the joint financial benefit of Ball Metal, Star Transportation, and Quarterback Transportation or with their joint consent.

16. To the extent par. 16 consists of conclusions of law, it is denied as to Ball Metal. To the extent that the allegations of par. 16 are directed to Star Transportation and Quarterback Transportation, no response is required from Ball Metal. Denied that Mr. Hataway was employed by Ball Metal. Denied that Mr. Hataway was employed jointly by Ball Metal, Star Transportation, and Quarterback Transportation. Denied that Mr. Hataway had a contract with Ball Metal or a joint contract with Ball Metal, Star Transportation, and Quarterback Transportation. Denied that Mr. Hataway operated the Tractor Trailer under Ball Metal's supervision, control, or right to control, or under the joint supervision, control or right to control of Ball Metal, Star Transportation, and Quarterback Transportation. Denied that Ball Metal should be considered Mr. Hataway's actual and statutory employer or that Ball Metal should be considered vicariously liable for Mr. Hataway's alleged negligence and recklessness.

17. To the extent par. 17 consists of conclusions of law, it is denied as to Ball Metal. To the extent that the allegations of par. 17 are directed to Star Transportation and Quarterback Transportation, no response is required from Ball

4

Metal. Denied that Mr. Hataway was the agent, servant, workman, and/or employee of Ball Metal. Denied that Mr. Hataway was acting in the course and scope of employment with Ball Metal. Denied that Mr. Hataway was acting under the direction, control, and authority of Ball Metal. Denied that Mr. Hataway was the joint agent, servant, workman, and/or employee of Ball Metal, Star Transportation, and Quarterback Transportation. Denied that Mr. Hataway was acting in the course and scope of joint employment with Ball Metal, Star Transportation, and Quarterback Transportation. Denied that Mr. Hataway was acting under the joint direction, control, and authority of Ball Metal, Star Transportation, and Quarterback Transportation. On information and belief, Mr. Hataway would have been an independent contractor of Star Transportation.

18. To the extent par. 18 consists of conclusions of law, it is denied as to Ball Metal. To the extent that the allegations of par. 18 are directed to Star Transportation and Quarterback Transportation, no response is required from Ball Metal. Denied that Ball Metal owned, leased, assigned or operated the Tractor Trailer allegedly driven by Mr. Hataway. Denied that Ball Metal participated with Star Transportation or Quarterback Transportation in leasing, assigning or operating the Tractor Trailer allegedly driven by Mr. Hataway.

19. To the extent par. 19 consists of conclusions of law, it is denied as to Ball Metal. To the extent that the allegations of par. 19 are directed to Star

5

Transportation and Quarterback Transportation, no response is required from Ball Metal. Denied that Ball Metal, Star Transportation, and Quarterback Transportation acted together as a single entity. Denied that Ball Metal, Star Transportation, and Quarterback Transportation operated and conducted business as a single entity for transporting goods in interstate commerce.

20. To the extent par. 20 consists of conclusions of law, it is denied as to Ball Metal. To the extent that the allegations of par. 20 are directed to Star Transportation and Quarterback Transportation, no response is required from Ball Metal. Denied that Ball Metal engaged with Star Transportation and Quarterback Transportation in the joint undertaking of a particular transaction for mutual profit, mutual control, and mutual contribution. Denied that Ball Metal entered into a contract memorializing the alleged joint undertaking with Star Transportation and Quarterback Transportation.

21. Denied that Ball Metal, Star Transportation, and Quarterback Transportation acted as a joint venture for transporting goods in interstate commerce.

22. To the extent par. 22 consists of a conclusion or conclusions of law, it is denied as to Ball Metal. To the extent that the allegations of par. 22 are directed to Star Transportation and Quarterback Transportation, no response is required from Ball Metal. Denied that Ball Metal contracted with Star

Transportation.  On the contrary, Ball Metal contracted as a shipper with Quarterback Transportation to arrange the transportation of a load of freight. Quarterback Transportation would have contracted with a motor carrier such as Star Transportation to carry the freight.  After reasonable investigation, Ball Metal is without sufficient knowledge or information to form a belief as to the truth of the remainder of par. 22, which is therefore deemed denied.

23.     Denied that Ball Metal acted as a motor carrier of the load being transported at the time of the crash.  Denied that Ball Metal acted as the broker of the load being transported at the time of the crash.  Admitted that Ball Metal was not and is not authorized to operate as a motor carrier or broker.

24.     To the extent par. 24 consists of a conclusion or conclusions of law, it is denied as to Ball Metal.  To the extent that the allegations of par. 24 are directed to Star Transportation and Quarterback Transportation, no response is required from Ball Metal.  Denied that Ball Metal is jointly and severally liable to Plaintiff in partnership or joint venture.  On the contrary, Ball Metal did not form a partnership or a joint venture with Star Transportation or Quarterback Transportation.  Denied that Ball Metal is liable to plaintiff as a sole proprietor, either individually or together with Star Transportation or Quarterback Transportation.  After reasonable investigation, Ball Metal lacks sufficient knowledge or information to form a belief as to the truth of the facts

7

alleged relating to the cause and extent of plaintiff's alleged injuries, and therefore they are deemed denied.

25.     To the extent paragraph 25 consists of a conclusion or conclusions of law, it is denied as to Ball Metal.  To the extent that the allegations of par. 25 are directed to Star Transportation and Quarterback Transportation, no response is required from Ball Metal.  Denied that Ball Metal acted in any way so as to cause or contribute to plaintiff's alleged injuries.

26.     Admitted that 67 Pa. Code §§231.1-213.10 incorporate by reference 49 CFR Parts 382, 385, 390-396, and the North American Standard Out of Service Criteria regarding motor carriers, officers, drivers, agents, employees and representatives of motor carriers, and vehicles, involved in interstate commerce.

27.     After reasonable investigation, Ball Metal lacks sufficient knowledge or information to form a belief as to the truth of the facts alleged relating to plaintiff's conduct and the cause or causes of the crash, and therefore they are deemed denied.

28.     Admitted that plaintiff seeks damages.  After reasonable investigation, Ball Metal lacks sufficient knowledge or information to form a belief as to the truth of the causes, extent and categories of injuries that plaintiff allegedly suffered, and therefore they are deemed denied.

4833-3847-3373

## JURISDICTION AND VENUE

29.　　Ball Metal does not object to the asserted subject matter jurisdiction of the Court.

30.　　Ball Metal does not object to the asserted venue of this action.

## OPERATIVE FACTS COMMON TO ALL COUNTS

31.　　The preceding paragraphs of this Answer are incorporated herein by reference as though fully set forth.

32.　　Admitted only that Mr. Hataway was operating the Tractor Trailer on that date and time. After reasonable investigation, Ball Metal lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in par. 32, and therefore they are deemed denied.

33.　　Admitted on information and belief.

34.　　Admitted on information and belief.

35.　　After reasonable investigation, Ball Metal lacks sufficient knowledge or information to form a belief as to the truth of the allegations in par. 35, and therefore they are deemed denied.

36.　　After reasonable investigation, Ball Metal lacks sufficient knowledge or information to form a belief as to the truth of the allegations in par. 36, and therefore they are deemed denied.

4833-3847-3373

37.     Denied as stated.  Par. 37 does not accurately recite Mr. Hataway's statements as represented in the police report.

38.     After reasonable investigation, Ball Metal lacks sufficient knowledge or information to form a belief as to the truth of the allegations in par. 38, and therefore they are deemed denied.

39.     After reasonable investigation, Ball Metal lacks sufficient knowledge or information to form a belief as to the truth of the allegations in par. 39, and therefore they are deemed denied.

40.     After reasonable investigation, Ball Metal lacks sufficient knowledge or information to form a belief as to the truth of the allegations in par. 40, and therefore they are deemed denied.

41.     After reasonable investigation, Ball Metal lacks sufficient knowledge or information to form a belief as to the truth of the allegations in par. 41, and therefore they are deemed denied.

42.     After reasonable investigation, Ball Metal lacks sufficient knowledge or information to form a belief as to the truth of the allegations in par. 42(i)-(xii), and therefore they are deemed denied.

43.     After reasonable investigation, Ball Metal lacks sufficient knowledge or information to form a belief as to the truth of the allegations in par. 43, and therefore they are deemed denied.

4833-3847-3373

44. After reasonable investigation, Ball Metal lacks sufficient knowledge or information to form a belief as to the truth of the allegations in par. 44, and therefore they are deemed denied.

45. After reasonable investigation, Ball Metal lacks sufficient knowledge or information to form a belief as to the truth of the allegations in par. 45, and therefore they are deemed denied.

46. After reasonable investigation, Ball Metal lacks sufficient knowledge or information to form a belief as to the truth of the allegations in par. 46, and therefore they are deemed denied. By way of further response, the police report indicates that alchohol/drugs were not suspected.

47. After reasonable investigation, Ball Metal lacks sufficient knowledge or information to form a belief as to the truth of the allegations in par. 47, and therefore they are deemed denied.

48. To the extent par. 48 consists of a conclusion or conclusions of law, it is denied as to Ball Metal. To the extent the allegations of par. 48 are directed to Star Transportation and Quarterback Transportation, no response is required from Ball Metal. Denied that Ball Metal participated in, knew, or should have known that Hataway was operating over hours, driving while fatigued, and otherwise operating the Tractor Trailer in an unsafe, dangerous and reckless condition in violation of the FMCSRs and Pennsylvania law. After reasonable

investigation, Ball Metal lacks sufficient knowledge or information to form a belief as to the truth of the allegations in par. 48 concerning Mr. Hataway's alleged fatigue and unsafe, dangerous and reckless condition, and therefore they are deemed denied.

49. After reasonable investigation, Ball Metal lacks sufficient knowledge or information to form a belief as to the truth of the allegations in par. 49, and therefore they are deemed denied.

50. After reasonable investigation, Ball Metal lacks sufficient knowledge or information to form a belief as to the truth of the allegations in par. 50(a)-(k), and therefore they are deemed denied.

51. To the extent the allegations of par. 51 are directed to Star Transportation and Quarterback Transportation, no response is required from Ball Metal. Denied that Ball Metal, knew or should have known that Hataway failed and/or refused to list on his employment application the motor vehicle violations alleged in par. 50(a)-(k). On the contrary, Ball Metal did not select Hataway to drive the Tractor Trailer. After reasonable investigation, Ball Metal is without sufficient knowledge or information to form a belief as to the truth of the facts alleged in par. 51 of the Complaint as they relate to Mr. Hataway's alleged employment application and alleged motor vehicle violations, and therefore they are deemed denied.

4833-3847-3373

52.     To the extent the allegations of par. 52 are directed to Star Transportation and Quarterback Transportation, no response is required from Ball Metal.  Denied that Ball Metal hired or chose to hire Hataway.  On the contrary, Ball Metal did not select Hataway to drive the Tractor Trailer.  Denied that Ball Metal knew of Hataway's reckless and dangerous driving record.  After reasonable investigation, Ball Metal is without sufficient knowledge or information to form a belief as to the truth of the facts alleged in par. 52 of the Complaint as they relate to Mr. Hataway's alleged driving record, and therefore they are deemed denied.

53.     To the extent the allegations of par. 53 are directed to Star Transportation and Quarterback Transportation, no response is required from Ball Metal.  Denied that Ball Metal "permitted" Hataway to operate the Tractor Trailer. On the contrary, Ball Metal had no authority to supervise Hataway and did not control or have the right to control Hataway in his work.  Denied further that Ball Metal knew or should have known that Hataway tested positive, or refused to test, on a pre-employment drug or alcohol test.  On the contrary, Ball Metal did not select Hataway to drive the Tractor Trailer.  After reasonable investigation, Ball Metal is without sufficient knowledge or information to form a belief as to the truth of the facts alleged in par. 53 of the Complaint as they relate to Mr. Hataway's alleged test results or refusal to test, and therefore they are deemed denied.

4833-3847-3373

54.	To the extent the allegations of par. 54 are directed to Star Transportation and Quarterback Transportation, no response is required from Ball Metal. Denied that Ball Metal "permitted" Hataway to operate the Tractor Trailer. On the contrary, Ball Metal had no authority to supervise Hataway and did not control or have the right to control Hataway in his work. Denied further that Ball Metal knew or should have known that Hataway did not satisfy the DOT return-to-duty requirements specific to alcohol and drug use when a driver tests positive and/or refuses a drug or alcohol test. On the contrary, Ball Metal did not select Hataway to drive the Tractor Trailer. After reasonable investigation, Ball Metal is without sufficient knowledge or information to form a belief as to the truth of the facts alleged in par. 54 of the Complaint as they relate to Mr. Hataway's alleged test results or refusal to test, and therefore they are deemed denied.

55.	To the extent the allegations of par. 55 are directed to Star Transportation and Quarterback Transportation, no response is required from Ball Metal. Denied that Ball Metal knew or should have known that Hataway had a history of being deemed medically disqualified from operating a commercial motor vehicle or that he was unsafe to operate the Tractor Trailer. On the contrary, Ball Metal did not select Hataway to drive the Tractor Trailer. Denied that Ball Metal "permitted" Hataway to operate the Tractor Trailer "under its control." On the contrary, Ball Metal had no authority to supervise Hataway, did

14

not control or have the right to control Hataway in his work, and did not control or have the right to control the Tractor Trailer. After reasonable investigation, Ball Metal is without sufficient knowledge or information to form a belief as to the truth of the facts alleged in par. 55 of the Complaint as they relate to Mr. Hataway's alleged physical or medical condition, and therefore they are deemed denied.

56. After reasonable investigation, Ball Metal is without sufficient knowledge or information to form a belief as to the truth of the facts alleged in par. 56 of the Complaint, and therefore they are deemed denied.

57. To the extent the allegations of par. 57 are directed to Star Transportation and Quarterback Transportation, no response is required from Ball Metal. Denied that Ball Metal "allowed" Hataway to operate the Tractor Trailer. On the contrary, Ball Metal had no authority to supervise Hataway, did not control or have the right to control Hataway in his work, and did not control or have the right to control the Tractor Trailer. Denied that Ball Metal knew or should have known that Hataway's medical history made him a danger to the driving public. On the contrary, Ball Metal did not select Hataway to drive the Tractor Trailer. After reasonable investigation, Ball Metal is without sufficient knowledge or information to form a belief as to the truth of the facts alleged in par. 57 of the

4833-3847-3373

Complaint as they relate to Mr. Hataway's alleged medical history, and therefore they are deemed denied.

58. To the extent the allegations of par. 58 are directed to Star Transportation and Quarterback Transportation, no response is required from Ball Metal. Denied that Ball Metal had a propensity for drug and alchohol violations. Denied that Ball Metal either knew or should have known that Hataway had a propensity for drug and alcohol violations. On the contrary, Ball Metal did not select Hataway to drive the Tractor Trailer. After reasonable investigation, Ball Metal is without sufficient knowledge or information to form a belief as to the truth of the facts alleged in par. 58 of the Complaint as they relate to Mr. Hataway's alleged violations, and therefore they are deemed denied.

59. To the extent the allegations of par. 59 are directed to Star Transportation and Quarterback Transportation, no response is required from Ball Metal. Denied that Ball Metal either knew or should have known that Hataway had a propensity for drug and alcohol violations before the crash that allegedly injured the plaintiff. On the contrary, Ball Metal did not select Hataway to drive the Tractor Trailer. Whether or not Hataway's arrest record or similar safety information was readily available, Ball Metal did not know in advance that Hataway would be the driver. After reasonable investigation, Ball Metal is without sufficient knowledge or information to form a

16

belief as to the truth of the facts alleged in par. 59 of the Complaint as they relate to Mr. Hataway's alleged violations, and therefore they are deemed denied.

60.     To the extent the allegations of par. 60 are directed to Star Transportation and Quarterback Transportation, no response is required from Ball Metal.  Denied that Ball Metal had a propensity for violations for unsafe driving, speeding, DUI, and/or drug possession charges.  Denied that Ball Metal either knew or should have known that Hataway had a propensity for violations, including unsafe driving, speeding, DUI, and/or drug possession charges.  On the contrary, Ball Metal did not select Hataway to drive the Tractor Trailer.  After reasonable investigation, Ball Metal is without sufficient knowledge or information to form a belief as to the truth of the facts alleged in par. 60 of the Complaint as they relate to Mr. Hataway's alleged violations, and therefore they are deemed denied.

61.     Admitted that, at all relevant times, the FMCSA has maintained a website that displays certain information concerning the registration, safety and compliance of individual registered interstate motor carriers.  The remainder of par. 61 is denied as characterization of a writing that speaks for itself.

62.     To the extent the allegations of par. 62 are directed to Star Transportation and Quarterback Transportation, no response is required from Ball Metal.  Admitted that Ball Metal was aware of the FMCSA website.

17

63.    To the extent the allegations of par. 63 are directed to Star Transportation and Quarterback Transportation, no response is required from Ball Metal. Denied that information available on the FMCSA website should have alerted Ball Metal that Quarterback Transportation was an unsafe "motor carrier." On the contrary, the website identifies Quarterback Transportation as a "broker" and has no motor carrier safety data concerning Quarterback Transportation. Denied that information available on the FMCSA website should have alerted Ball Metal that Star Transportation was an unsafe "motor carrier" that used unsafe drivers and dangerous equipment. On the contrary, Ball Metal did not select or contract Star Transportation to carry its freight and did not know in advance that Star Transportation would be the motor carrier. By way of further response, according to the FMCSA website, Star Transportation has had a "satisfactory" safety rating since 4/12/2017.

64.    To the extent that par. 64 consists of a conclusion or conclusions of law, it is denied as to Ball Metal. To the extent the allegations of par. 64 are directed to Star Transportation and Quarterback Transportation, no response is required from Ball Metal. Denied that Ball Metal operated, hired, retained or assigned Mr. Hataway to deliver goods to its customers using tractors and trailers. On the contrary, Ball Metal did not select Mr. Hataway to drive the Tractor Trailer. Denied that Ball Metal negligently, recklessly, and with conscious

disregard for the public's safety, operated, hired, retained or assigned Mr. Hataway to deliver goods to its customers using tractors and trailers. After reasonable investigation, Ball Metal is without sufficient knowledge or information to form a belief as to the truth of the facts alleged in par. 64 of the Complaint as they relate to Mr. Hataway's allegedly deplorable safety record, incompetence, and dangerous behavior, and therefore they are deemed denied.

65.     The allegations of par. 65 are directed to Star Transportation and Quarterback Transportation, and no response is required from Ball Metal. To the extent that par. 65 consists of a conclusion or conclusions of law, it is denied as to Ball Metal. Notwithstanding the foregoing, Ball Metal exercised no control over the dispatching of the Tractor Trailer.

66.     The allegations of par. 66 are directed to Star Transportation and Quarterback Transportation, and no response is required from Ball Metal. To the extent that par. 66 consists of a conclusion or conclusions of law, it is denied as to Ball Metal. Notwithstanding the foregoing, Ball Metal exercised no control over the routing of the Tractor Trailer.

67.     Par. 67 of the Complaint contains no allegations of any kind, and therefore no response is required.

68.     To the extent that par. 68 contains a conclusion or conclusions of law, it is denied as to Ball Metal. Denied that Ball Metal either controlled or had the

contractual right to control the transportation of the load in question by Star Transportation and its driver. On the contrary, on information and belief, Quarterback Transportation would have engaged Star Transportation as an independent contractor. Denied that Ball Metal either controlled or had the contractual right to control Quarterback Transportation in connection with transporting the load in question. On the contrary, the shipper/broker agreement between Ball Metal and Quarterback Transportation provides that Quarterback Transportation is an independent contractor. Denied that Ball Metal exercised control over Hataway, Star Transportation, and Quarterback Transportation to such a degree that they should all be considered agents of Ball Metal.

## COUNT 1 -- VICARIOUS LIABLITY

## CARMEN CIOTOLA v. STAR TRANSPORATION & TRUCKING LLC, AND QUARTERBACK TRANSPORTATION USA INC. AS BEING VICARIOUSLY LIABLE FOR RONALD HATAWAY

69. The preceding paragraphs of this Answer are incorporated by reference as though fully set forth herein.

70. The allegations of par. 70 are directed to Star Transportation and Quarterback Transportation, and no response is required from Ball Metal. After reasonable investigation, Ball Metal is without sufficient knowledge or information to form a belief as to the truth of the facts alleged in par. 75(a)-(qq) of

the Complaint as they relate to the Mr. Hataway's alleged negligence, carelessness, and recklessness, and therefore they are deemed denied.

71.     After reasonable investigation, Ball Metal is without sufficient knowledge or information to form a belief as to the truth of the facts alleged in par. 71 of the Complaint as they relate to the plaintiff's harm and its causes, and therefore they are deemed denied.

## COUNT 2 -- NEGLIGENT and/or RECKLESS HIRING/ SUPERVISION/ RETENTION

## CARMEN CIOTOLA V. STAR TRANSPORTATION AND TRUCKING, LLC, QUARTERBACK TRANSPORTATION USA INC. AND BALL METAL BEVERAGE CONTAINER CORP.

72.     The preceding paragraphs of this Answer are incorporated herein by reference as though fully set forth.

73.     The allegations of par. 73 are directed to Star Transportation and Quarterback Transportation, and no response is required from Ball Metal.

74.     After reasonable investigation, Ball Metal is without sufficient knowledge or information to form a belief as to the truth of the facts alleged in par. 74 of the Complaint concerning the causes of plaintiff's alleged injuries, and therefore they are deemed denied.

75.     The allegations of par. 75 are directed to Star Transportation and Quarterback Transportation, and no response is required from Ball Metal.  After

reasonable investigation, Ball Metal is without sufficient knowledge or information to form a belief as to the truth of the facts alleged in par. 75(a)-(k) of the Complaint as they relate to the Hataway's alleged unsafe history of motor vehicle and criminal violations, and therefore they are deemed denied.

76. The allegations of par. 76(a)-(nn) are directed to Star Transportation and Quarterback Transportation, and no response is required from Ball Metal.

77. To the extent that par. 77 consists of a conclusion or conclusions of law, it is denied as to Ball Metal. Admitted that Ball Metal contracted as a shipper with Quarterback Transportation to arrange the transportation of a load of freight. Denied that Ball Metal hired Quarterback Transportation negligently. Denied that Ball Metal hired Star Transportation to transport its freight. On the contrary, Quarterback Transportation would have hired a motor carrier such as Star Transportation to transport Ball Metal's shipment. Denied that Ball Metal knew or should have known that Star Transportation or Quarterback Transportation had a propensity for engaging in unsafe and dangerous shipment practices and hiring dangerous and poorly trained drivers. After reasonable investigation, Ball Metal is without sufficient knowledge or information to form a belief as to the truth of the facts alleged in par. 77 of the Complaint as they relate to any alleged propensity of Star Transportation or Quarterback Transportation for engaging in unsafe and

22

dangerous shipment practices and hiring dangerous and poorly trained drivers, and therefore they are deemed denied.

78.    After reasonable investigation, Ball Metal is without sufficient knowledge or information to form a belief as to the truth of the facts alleged in par. 78 of the Complaint as they relate to the plaintiff's harm and its causes, and therefore they are deemed denied.

## COUNT 3 -- NEGLIGENT ENTRUSTMENT

## CARMEN CIOTOLA V. STAR TRANSPORTATION AND TRUCKING, LLC, QUARTERBACK TRANSPORTATION USA INC. AND BALL METAL BEVERAGE CONTAINER CORP.

79.    The preceding paragraphs are incorporated herein by reference as though fully set forth.

80.    To the extent that par. 80 consists of a conclusion or conclusions of law, it is denied as to Ball Metal.  To the extent that the allegations of par. 80 are directed to Star Transportation and Quarterback Transportation, no response is required from Ball Metal.  Denied that, as a shipper, Ball Metal chose or had a right to choose a driver for the load in question.   Denied that Ball Metal participated, or had a right to participate, with Star Transportation or Quarterback Transportation in choosing a driver for the load in question.

81.    To the extent that the allegations of par. 81 are directed to Star Transportation and Quarterback Transportation, no response is required from Ball

23

Metal. Denied that Ball Metal entrusted the Tractor Trailer to Mr. Hataway. Denied that Ball Metal participated with Star Transportation or Quarterback Transportation in entrusting the Tractor Trailer to Mr. Hataway. On the contrary, Ball Metal did not own, lease, assign, operate, control, or have the right to control, the Tractor Trailer. After reasonable investigation, Ball Metal is without sufficient knowledge or information to form a belief as to the truth of the allegation in par. 81 of the Complaint that Mr. Hataway did not possess the knowledge, skill, experience, available equipment and personal characteristics to operate a tractor trailer, and therefore the allegation is deemed denied.

82. To the extent that the allegations of par. 82 are directed to Star Transportation and Quarterback Transportation, no response is required from Ball Metal. Denied that Ball Metal knew or should have known that Mr. Hataway did not possess the knowledge, skill, experience, available equipment and personal characteristics to transport freight and/or goods, or to operate a Tractor Trailer, without creating an unreasonable risk of injury to others. After reasonable investigation, Ball Metal is without sufficient knowledge or information to form a belief as to the allegation in par. 82 of the Complaint that Mr. Hataway did not possess the knowledge, skill, experience, available equipment and personal characteristics to operate a tractor trailer and transport freight without an unreasonable risk of injury to others, and therefore the allegation is deemed denied.

24

83. To the extent that par. 83 consists of a conclusion or conclusions of law, it is denied as to Ball Metal. To the extent that the allegations of par. 83 are directed to Star Transportation and Quarterback Transportation, no response is required from Ball Metal. Denied that Ball Metal entrusted the Tractor Trailer to Mr. Hataway. Denied that Ball Metal participated with Star Transportation or Quarterback Transportation in entrusting the Tractor Trailer to Mr. Hataway. On the contrary, Ball Metal did not own, lease, assign, operate, control, or have the right to control, the Tractor Trailer.

84. To the extent that par. 84 consists of a conclusion or conclusions of law, it is denied as to Ball Metal. To the extent that the allegations of par. 84 are directed to Star Transportation and Quarterback Transportation, no response is required from Ball Metal. Denied that Ball Metal entrusted the Tractor Trailer to Mr. Hataway negligently. On the contrary, Ball Metal did not own, lease, assign, operate, control, or have the right to control, the Tractor Trailer. Denied that Ball Metal participated with Star Transportation or Quarterback Transportation in negligently entrusting the Tractor Trailer to Mr. Hataway. Denied that Ball Metal knew or should have known that Mr. Hataway lacked the necessary skill, judgment, and/or prudence with which to operate the vehicle. After reasonable investigation, Ball Metal is without sufficient knowledge or information to form a belief as to the truth of the facts alleged in par. 85 of the Complaint concerning Mr.

Hataway's alleged lack of skill, judgment, and prudence, and therefore they are deemed denied.

85. To the extent that par. 85 consists of a conclusion or conclusions of law, it is denied as to Ball Metal. To the extent that the allegations of par. 85 are directed to Star Transportation and Quarterback Transportation, no response is required from Ball Metal. Denied that Ball Metal entrusted the Tractor Trailer to Mr. Hataway negligently or recklessly. Denied that Ball Metal participated with Star Transportation or Quarterback Transportation in negligently or recklessly entrusting the Tractor Trailer to Mr. Hataway. On the contrary, Ball Metal did not own, lease, assign, operate, control, or have the right to control, the Tractor Trailer. Denied that Ball Metal knew or should have known that Mr. Hataway had a propensity to cause motor vehicle collisions. After reasonable investigation, Ball Metal is without sufficient knowledge or information to form a belief as to the truth of the facts alleged in par. 85 of the Complaint concerning Mr. Hataway's alleged propensity to cause collisions, and therefore they are denied.

86. To the extent that the allegations of par. 86 are directed to Star Transportation and Quarterback Transportation, no response is required from Ball Metal. Denied that Ball Metal knew or should have known that Hataway had an unsafe history of motor vehicle violations and criminal violations as alleged in par. 86. After reasonable investigation, Ball Metal is without sufficient knowledge

or information to form a belief as to the truth of the facts alleged in par. 86(a)-(k) of the Complaint concerning Mr. Hataway's alleged unsafe history of motor vehicle violations and criminal violations.

87.     To the extent that par. 87 consists of a conclusion or conclusions of law, it is denied as to Ball Metal.  To the extent that the allegations of par. 87 are directed to Star Transportation and Quarterback Transportation, no response is required from Ball Metal.  Denied that Ball Metal entrusted the Tractor Trailer to Mr. Hataway, negligently or otherwise.  Denied that Ball Metal participated with Star Transportation or Quarterback Transportation in negligently entrusting the Tractor Trailer to Mr. Hataway.  On the contrary, Ball Metal did not own, lease, assign, operate, control, or have the right to control, the Tractor Trailer.  Denied that Ball Metal knew or should have known that Mr. Hataway had a propensity to violate the motor vehicle code.  After reasonable investigation, Ball Metal is without sufficient knowledge or information to form a belief as to the truth of the facts alleged in par. 87 of the Complaint concerning Mr. Hataway's alleged propensity to violate the motor vehicle code, and therefore they are denied.

88.     To the extent that par. 88 consists of a conclusion or conclusions of law, it is denied as to Ball Metal.  Denied that Ball Metal was negligent in entrusting the transportation of its freight to Quarterback Transportation. Denied that Ball Metal knew or should have known that Quarterback

27

Transportation has a propensity for engaging in unsafe practices and hiring dangerous and poorly trained drivers. On the contrary, the shipper/broker transportation agreement between Ball Metal and Quarterback Transportation requires Quarterback Transportation to engage carriers who agree to maintain a DOT safety rating of "satisfactory" and who agree to notify Quarterback Transportation if they are found by DOT to be marginal or unfit, or they become the subject of an Onsite Comprehensive Investigation, a Notice of Claim, or Out of Service Order. Denied that Ball Metal entrusted the transportation of its freight to Star Transportation. On the contrary, Ball Metal tendered the shipment through a computerized transportation management system, and Quarterback Transportation accepted the tender. Quarterback Transportation would have retendered the load to a third party such as Star Transportation; and Ball Metal would have loaded its shipment onto the tractor trailer arranged by Quarterback Transportation. Denied that Ball Metal selected Star Transportation to transport its shipment. Denied that Ball Metal knew or should have known that Star Transportation has a propensity for engaging in unsafe practices and hiring dangerous and poorly trained drivers. After reasonable investigation, Ball Metal is without sufficient knowledge or information to form a belief as to the truth of the facts alleged in par. 88 of the Complaint concerning a propensity of Star

Transportation and Quarterback Transportation to engage in unsafe practices and hire dangerous and poorly trained drivers, and therefore they are deemed denied.

89.    Denied that Ball Metal knew or should have known that Star Transportation and its drivers had an unsafe driving record in the 24 months before the alleged accident.  On the contrary, Ball Metal did not hire Star Transportation to transport its freight.    By way of further response, the shipper/broker transportation agreement between Ball Metal and Quarterback Transportation requires Quarterback Transportation to engage carriers who agree to maintain a DOT safety rating of "satisfactory" and who agree to notify Quarterback Transportation if they are found by DOT to be marginal or unfit, or they become the subject of an Onsite Comprehensive Investigation, a Notice of Claim, or Out of Service Order.  Star Transportation has had a "satisfactory" safety rating since 4/12/2017 according to the FMCSA website.  After reasonable investigation, Ball Metal is without sufficient knowledge or information to form a belief as to the truth of the facts alleged in par. 89(a)-(g) of the Complaint concerning the driving record of Star Transportation and its drivers, and therefore they are deemed denied.

90.    To the extent that par. 90 consists of a conclusion or conclusions of law, it is denied as to Ball Metal.  To the extent that the factual allegations of par. 90 are directed to Star Transportation and Quarterback Transportation, no response is required from Ball Metal.  Denied that Ball Metal hired drivers to transport its

products across state lines.  Denied that Ball Metal participated, or had a right to participate, in the hiring practices of Star Transportation and Quarterback Transportation.

91.	To the extent that par. 91 consists of a conclusion or conclusions of law, it is denied as to Ball Metal.  To the extent that the factual allegations of par. 91 are directed to Star Transportation and Quarterback Transportation, no response is required from Ball Metal.  Denied that Ball Metal hired drivers to transport its products across state lines.  On the contrary, Ball Metal has hired Quarterback Transportation and other brokers to arrange the transportation of its freight across state lines.  Denied that Mr. Hataway was Ball Metal's driver.  On the contrary, on information and belief, Star Transportation would have hired Mr. Hataway as a driver on an independent contractor basis.  Denied that Ball Metal participated, or had a right to participate, in the hiring practices of Star Transportation and Quarterback Transportation.

92.	To the extent that the factual allegations of par. 92 are directed to Star Transportation and Quarterback Transportation, no response is required from Ball Metal.  Denied that Ball Metal knew or should have known that Star Transportation's driver, Mr. Hataway, would likely cause harm to the motoring public.  Denied that Ball Metal entrusted the Tractor Trailer to Mr. Hataway.  Denied that Ball Metal participated with Star Transportation or Quarterback

Transportation in entrusting the Tractor Trailer to Mr. Hataway. On the contrary, Ball Metal did not own, lease, assign, operate, control, or have the right to control, the Tractor Trailer.

93. To the extent that par. 93 consists of a conclusion or conclusions of law, it is denied as to Ball Metal. To the extent that the factual allegations of par. 93 are directed to Star Transportation and Quarterback Transportation, no response is required from Ball Metal. Denied that Ball Metal entrusted the Tractor Trailer to Mr. Hataway. Denied that Ball Metal participated with Star Transportation or Quarterback Transportation in entrusting the Tractor Trailer to Mr. Hataway. On the contrary, Ball Metal did not own, lease, assign, operate, control, or have the right to control, the Tractor Trailer.

94. To the extent that the factual allegations of par. 94 are directed to Star Transportation and Quarterback Transportation, no response is required from Ball Metal. Denied that Ball Metal hired drivers to transport its freight across state lines. On the contrary, Ball Metal hired Quarterback Transportation and other brokers to arrange the transportation of its freight across state lines. By way of further response, the shipper/broker transportation agreement between Ball Metal and Quarterback Transportation requires Quarterback Transportation to engage carriers who agree to maintain a DOT safety rating of "satisfactory" and who agree to notify Quarterback Transportation if they are found by DOT to be marginal or

4833-3847-3373

unfit, or they become the subject of an Onsite Comprehensive Investigation, a Notice of Claim, or Out of Service Order.

95. To the extent that par. 95 consists of a conclusion or conclusions of law, it is denied as to Ball Metal. To the extent that the factual allegations of par. 95 are directed to Star Transportation and Quarterback Transportation, no response is required from Ball Metal. Denied that Ball Metal entrusted the Tractor Trailer to Mr. Hataway. Denied that Ball Metal participated with Star Transportation or Quarterback Transportation in entrusting the Tractor Trailer to Mr. Hataway. On the contrary, Ball Metal did not own, lease, assign, operate, control, or have the right to control, the Tractor Trailer.

96. After reasonable investigation, Ball Metal is without sufficient knowledge or information to form a belief as to the truth of the facts alleged in par. 96 of the Complaint as they relate to the plaintiff's alleged injury and its causes, and therefore they are deemed denied.

97. To the extent that the factual allegations of par. 97 are directed to Star Transportation and Quarterback Transportation, no response is required from Ball Metal. Denied that Ball Metal entrusted the Tractor Trailer to Mr. Hataway, either in conscious disregard of plaintiff's rights and safety or otherwise. Denied that Ball Metal participated with Star Transportation or Quarterback Transportation in

4833-3847-3373

entrusting the Tractor Trailer to Mr. Hataway. On the contrary, Ball Metal did not own, lease, assign, operate, control, or have the right to control, the Tractor Trailer.

98. After reasonable investigation, Ball Metal is without sufficient knowledge or information to form a belief as to the truth of the facts alleged in par. 98 of the Complaint as they relate to the plaintiff's alleged harm and its causes, and therefore they are deemed denied.

## COUNT 4 -- JOINT VENTURE

## PLAINTIFF CARMEN CIOTOLA VS. STAR TRANSPORTATION AND TRUCKING, LLC, QUARTERBACK TRANSPORTATION USA INC. AND BALL METAL BEVERAGE CONTAINER CORP.

99. The preceding paragraphs of this Answer are incorporated herein by reference as though fully set forth.

100. Denied that all Defendants were engaged in a joint venture to haul goods for profit on the above referenced, date, place, and time. On the contrary, Ball Metal hired Quarterback Transportation as a transportation broker on an independent contractor basis. On information and belief, Quarterback Transportation would have hired Star Transportation as a carrier on an independent contractor basis.

101. Denied that, at all times material hereto, Defendants transacted business as a joint venture providing full service freight transportation, freight storage, and freight logistics brokering, operating and utilizing a fleet of semi-

trucks, trailers, warehouses, and facilities; combined their resources to undertake a common interest; and shared in all profits that were generated. On the contrary, Ball Metal hired Quarterback Transportation as a transportation broker on an independent contractor basis. On information and belief, Quarterback Transportation would have hired Star Transportation as a carrier on an independent contractor basis.

102. Denied that Star Transportation, Quarterback Transportation, and/or Ball Metal are jointly and severally liable in partnership, joint venture or sole proprietorship for the injuries and damages suffered by plaintiff. On the contrary, Ball Metal hired Quarterback Transportation on an independent contractor basis. On information and belief, Quarterback Transportation would have hired Star Transportation as a carrier on an independent contractor basis.

103. Denied. On the contrary, at all relevant times hereto, Ball Metal contracted with Quarterback Transportation on an independent contractor basis to arrange the transportation of the load in question. On information and belief, Quarterback Transportation would have contracted with a motor carrier such as Star Transportation on an independent contractor basis to transport the load in question.

4833-3847-3373

104.   Denied that Ball Metal acted as a motor carrier and as the broker of the load being transported at the time of the Crash.  Admitted that Ball Metal was not authorized to act as a motor carrier or as a broker.

105.   To the extent that par. 105 consists of a conclusion or conclusions of law, it is denied as to Ball Metal.  To the extent that the factual allegations of par. 105 are directed to Star Transportation and Quarterback Transportation, no response is required from Ball Metal.  Denied that Ball Metal caused the Crash and plaintiff's injuries, either alone, or concurrently with, or in combination with Star Transportation and Quarterback Transportation.

106.   To the extent that the factual allegations of par. 106 are directed to Star Transportation and Quarterback Transportation, no response is required from Ball Metal.  Denied that Ball Metal paid Mr. Hataway.  On the contrary, Ball Metal would have paid Quarterback Transportation according to the rates, charges, and provisions of the shipper/broker transportation agreement between them.  On information and belief, Quarterback Transportation would have paid a motor carrier such as Star Transportation, and the motor carrier would have paid a driver such as Mr. Hataway.   After reasonable investigation, Ball Metal is without sufficient knowledge or information to form a belief as to the truth of the facts alleged in par. 106 of the Complaint as they relate to who bore the expense of tolls, meals, and other expenses, and therefore they are deemed denied.

4833-3847-3373

107.  To the extent that the factual allegations of par. 107 are directed to Star Transportation and Quarterback Transportation, no response is required from Ball Metal.  Admitted that Ball Metal was in contact with Quarterback Transportation by email and by its carrier load reporting system.  Denied that Ball Metal was in contact with the motor carrier to track the status of the shipment from origin to delivery.

108.  To the extent that the factual allegations of par. 108 are directed to Star Transportation and Quarterback Transportation, no response is required from Ball Metal.  Denied that Ball Metal earned, or intended to earn, a profit from this transportation.

109.  To the extent that par. 109 consists of a conclusion or conclusions of law, it is denied as to Ball Metal.  To the extent that the factual allegations of par. 109 are directed to Star Transportation and Quarterback Transportation, no response is required from Ball Metal.  Denied that Ball Metal controlled the Tractor Trailer on the above referenced date, place, and time.  On the contrary, Ball Metal did not own, lease, assign, operate, control, or have the right to control, the Tractor Trailer.  Denied that on the above-referenced date, place and time, Mr. Hataway was the duly authorized agent, servant and/or employee, of Ball Metal so as to give Ball Metal control over the Tractor Trailer.  On the contrary, on

information and belief, Mr. Hataway would have been an independent contractor of Star Transportation or other motor carrier.

110. To the extent that the factual allegations of par. 110 are directed to Star Transportation and Quarterback Transportation, no response is required from Ball Metal. Denied that on the above referenced date, place, and time, Mr. Hataway was performing a service for the profit of all the Defendants. On the contrary, Ball Metal did not make or intend to make a profit from the transportation of its goods and material by Mr. Hataway.

111. To the extent that the factual allegations of par. 111 are directed to Star Transportation and Quarterback Transportation, no response is required from Ball Metal. Denied that Ball Metal was "aware" that Mr. Hataway was transporting the load in question. On the contrary, Ball Metal did not know in advance that Hataway would be the driver. Ball Metal was not in contact with the driver during the transportation of the load in question. Ball Metal tendered the shipment through a computerized transportation management system, and Quarterback Transportation accepted the tender. Quarterback Transportation would have retendered the load to a third party such as Star Transportation; and Ball Metal would have loaded the shipment onto the tractor trailer arranged by Quarterback Transportation.

4833-3847-3373

112.   To the extent that par. 112 consists of a conclusion or conclusions of law, it is denied as to Ball Metal.  To the extent that the factual allegations of par. 112 are directed to Star Transportation and Quarterback Transportation, no response is required from Ball Metal.   Denied that Ball Metal controlled or had a right to control Mr. Hataway in transporting Ball Metal's freight.

113.   To the extent that par. 113 consists of a conclusion or conclusions of law, it is denied as to Ball Metal.  To the extent that the factual allegations of par. 113 are directed to Star Transportation and Quarterback Transportation, no response is required from Ball Metal.   Denied that Ball Metal exercised or had a right to exercise control over Mr. Hataway as alleged in the Complaint.

114.   To the extent that par. 114 consists of a conclusion or conclusions of law, it is denied as to Ball Metal.  To the extent that the factual allegations of par. 114 are directed to Star Transportation and Quarterback Transportation, no response is required from Ball Metal.  Denied that Ball Metal held out Mr. Hataway as its agent, servant, and/or employee in such a way as to make Ball Metal vicariously liable for the acts and/or omissions of Mr. Hataway,

115.  After reasonable investigation, Ball Metal is without sufficient knowledge or information to form a belief as to the truth of the facts alleged in par. 115 of the Complaint concerning plaintiff's alleged harm and its causes, and therefore they are deemed denied.

4833-3847-3373

WHEREFORE, Defendant Ball Metal Beverage Container Corp. demands judgment in its favor and against plaintiff Carmen Ciotola on all Counts.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

Plaintiff's Complaint fails to state a claim upon which relief can be granted against Ball Metal.

### SECOND DEFENSE

Ball Metal denies that it was guilty of any negligent act or omission which was a substantial factor in causing Plaintiff's alleged injuries.

### THIRD DEFENSE

Ball Metal breached no duty to Plaintiff.  Ball Metal did not select, contract, or control the motor carrier, the driver, or the equipment involved in the accident.

### FOURTH DEFENSE

Any injuries or damages caused to and/or sustained by Plaintiff were proximately or directly caused by the negligence or carelessness of person(s) or entity(ies) other than Ball Metal and over whom Ball Metal had no control and no right or duty of control.

4833-3847-3373

## FIFTH DEFENSE

Any negligence found to be attributable to Ball Metal, which negligence is denied herein, is offset by the greater comparative and/or contributory negligence on the part of Plaintiff or of other third persons or entities, named or unnamed.

## SIXTH DEFENSE

Plaintiffs' claims are barred in whole and/or in part by the applicable provisions of the Pennsylvania Comparative Negligence Act.

## SEVENTH DEFENSE

Plaintiff's claims are barred by the applicable statute(s) of limitations.

## EIGHTH DEFENSE

Plaintiff assumed the risk of his damages which limits or bars all claims asserted by Plaintiff.

## NINTH DEFENSE

Damages for delay are not appropriate against Ball Metal. Accordingly, Plaintiff is not entitled to same.

## TENTH DEFENSE

It is denied that Plaintiff's damages are causally related to the incident described in Plaintiff's Complaint.

4833-3847-3373

## ELEVENTH DEFENSE

Plaintiff's claims are barred or limited by Plaintiff's failure to mitigate damages.

## TWELFTH DEFENSE

Plaintiff's damages, if any, were the result of an intervening or superseding cause.

## THIRTEENTH DEFENSE

At all times material hereto, Ball Metal acted reasonably and appropriately under the circumstances.

## FOURTEENTH DEFENSE

Plaintiffs' claims are barred for Plaintiffs' failure to join indispensable parties.

## FIFTEENTH DEFENSE

Defendant pleads any and all applicable defenses of all relevant statutes and regulations of the Commonwealth of Pennsylvania and the United States, including and not limited to the Federal Motor Safety Carrier Regulations.

## SIXTEENTH DEFENSE

Ball Metal reserves the right to interpose such other defenses and/or objections to the allegations set forth in Plaintiffs Complaint as continuing investigation and discovery may disclose.

4833-3847-3373

## BALL METAL'S CROSS-CLAIM
## FOR COMMON LAW CONTRIBUTION OR INDEMNITY
## AGAINST STAR TRANSPORTATION AND QUARTERBACK
## TRANSPORTATION

1.      Ball Metal incorporates by reference all well-pleaded averments of Plaintiff's Complaint, without admission, as though fully set forth.

2.      Ball Metal incorporates by reference its Answer to Plaintiff's Complaint, as though fully set forth.

3.      For the reasons stated in its Answer, Ball Metal denies any and all liability in this matter.  However, if Ball Metal should be found liable at the time of trial on Plaintiff's cause or causes of action, which is denied, and if co-defendants are also found liable, then Ball Metal demands contribution from co-defendants Star Transportation and Quarterback Transportation for all or part of Plaintiff's claims against Ball Metal pursuant to statutory contribution and comparative negligence, or pursuant to common law contribution.

4.      For the reasons stated in its Answer, Ball Metal denies any and all liability in this matter.  However, if Ball Metal should be found liable at the time of trial on Plaintiff's cause or causes of action, which is denied, and if co-defendants are also found liable and their liability is determined to be active or primary and Ball Metal's liability is determined to be passive or secondary, co-defendants Star Transportation and Quarterback Transportation may be liable to Ball Metal for

4833-3847-3373

common law indemnification independent of any contractual obligation to defend and indemnify Ball Metal. Ball Metal reserves the right to seek contractual defense and indemnity from Quarterback Transportation Inc. pursuant to the terms of the shipper/broker transportation agreement between Ball Metal and Quarterback Transportation.

WHEREFORE, Ball Metal Beverage Container Corp. demands judgment against co-defendants Star Transportation & Trucking LLC and Quarterback Transportation Inc. for contribution and common law indemnification.

Respectfully submitted,
Obermayer Rebmann Maxwell & Hippel
LLP

By: /s/ Nicholas R. Jimenez, Esquire
    Nicholas Jimenez (Pa. 321144)
    Richard P. Limburg (Pa. 39598)
    Obermayer Rebmann Maxwell &
    Hippel LLP
    Suite 400
    200 Locust Street
    Harrisburg, PA 17101
    and
    Centre Square West
    1500 Market Street, Suite 3400
    Philadelphia, PA 19102
    Counsel for Defendant Ball Metal
    Beverage Container Corp.
Dated: August 2, 2019    215-665-3000

4833-3847-3373

# CERTIFICATE OF SERVICE

I, Nicholas R. Jimenez, counsel for defendant Ball Metal Beverage Container Corp., certify that on August 2, 2019, I caused **Ball Metal's Answer to Plaintiff's Amended Complaint, with Affirmative Defenses and Crossclaims** to be served on the following persons in the manner indicated below:

| | |
|---|---|
| Harry P. McGrath, Esquire<br>Fellerman & Ciarimboli, P.C.<br>183 Market Street, Suite 200<br>Kingston, PA  18704<br>*Counsel for Carmen Ciotola*<br><br>Via Email and Regular Mail | Joseph R. Bonfig, Esquire<br>Zarwin Baum DeVito Kaplan Schaer Toddy PC<br>1818 Market Street, 13th Floor<br>Philadelphia, PA 19103<br>*Counsel for Star Transportation and Trucking LLC*<br><br>Via Email and Regular Mail |
| Henry J. Noye, Esquire<br>Bunker & Ray<br>436 Walnut Street, WA01A,<br>Philadelphia, PA 19106<br>*Counsel for Quarterback Transportation USA, Inc*<br><br><br>Via Email and Regular Mail | |

By: <u>/s/ Nicholas R. Jimenez, Esquire</u>
      Richard P. Limburg, Esquire
      Nicholas Jimenez, Esquire
      Obermayer Rebmann Maxwell & Hippel LLP
      Centre Square West
      1500 Market Street, Ste 3400
      Philadelphia, PA 19102
      *Counsel for Ball Metal Beverage Container Corp.*

Dated: August 2, 2019

4833-3847-3373